**In the United States District Court
for the District of Kansas**

───────────

Case No. 19-cv-02346-TC-JPO

───────────

BOILERMAKER-BLACKSMITH NAT'L PENSION TRUST, ET AL.,

*Plaintiffs*

v.

BECKER BOILER CO., INC.,

*Defendant*

───────────

**MEMORANDUM AND ORDER**

Judge Melgren previously concluded that Defendant Becker Boiler Co., Inc., was required to make interim withdrawal liability payments while the parties arbitrate the issue of ultimate liability. Doc. 35.[1] Plaintiffs now move for statutory damages in light of that decision. Doc. 37. For the following reasons, the Motion is granted.

**I**

**A**

This is an employee benefits dispute between a pension fund and a withdrawing participant. Plaintiffs are a multiemployer pension fund and its fiduciary (the "Fund"). Doc. 1 at 2. The Fund was a third-party beneficiary of a collective bargaining agreement between Defendant, Becker Boiler Co., Inc. ("Becker"), and the International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers

---

[1] That decision is also available at *Boilermaker-Blacksmith Nat'l Pension Tr. v. Becker Boiler Co.*, No. 19-2346, 2020 WL 4200748 (D. Kan. July 22, 2020).

of America (the "Union"). *Id.* at 2–3. Under this agreement, Becker was obligated to contribute to the Fund. *Id.*

After the Union lost its status as the bargaining representative of Becker's employees, the Fund voted to terminate Becker as a contributing employer. *Id.* at 3. The Board's termination eliminated Becker's obligation to contribute to the Fund, an event that constituted a "withdrawal" as that term is used in 29 U.S.C. § 1383(a). Doc. 35 at 5. That change from contributor to withdrawal status gives rise to this lawsuit.

Following Becker's withdrawal, the Fund sent Becker a Withdrawal Liability Notice and Demand letter. Doc. 1-2 at 5–6. The letter acknowledged that Becker's termination eliminated its obligation to contribute to the Fund but demanded withdrawal liability payment for unfunded, vested benefits. *Id.* The Fund demanded that payment be made in either a lump sum or in 86 monthly payments. *Id.* at 5.

Becker disagreed with the Fund's demand for withdrawal payment. Doc. 1-2 at 1–2. Seeking to resolve the question of withdrawal payment liability, Becker submitted the case to arbitration, as required by the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* ("ERISA"). Doc. 6 at 1; 29 U.S.C. § 1401(a)(1).

The Fund then filed this lawsuit to enforce Becker's obligation to make interim withdrawal liability payments while the parties arbitrated Becker's ultimate liability. Doc. 1; *see* 29 U.S.C. §§ 1399(c)(2), 1401(d). In the July 22, 2020 Memorandum and Order, Judge Melgren granted the Fund's Motion for Judgment on the Pleadings and found Becker liable for interim withdrawal liability payments. Doc. 35 (applying a "pay now, dispute later" rule).

**B**

The Fund now moves for statutory damages under 29 U.S.C. § 1132(g)(2). Doc. 37. Specifically, it seeks to collect on the unpaid contributions, that it was previously awarded, but also interest on the

unpaid contributions, an amount akin to liquidated damages, and attorney's fees.[2] Doc. 38.

According to the Fund's most recent calculation, Becker missed 24 consecutive monthly payments of $15,199.17 starting January 14, 2019. Doc. 47-1 at 2. These payments totaled $364,780.08 as of December 14, 2020. *Id.*

In addition to the principal amount of unpaid contributions, the Fund requests that Becker pay interest on the unpaid contributions at the rate set in its Trust Agreement: 12 percent per year on each delinquent payment. Doc. 38 at 7–8; Doc. 1-1 at 3. The Fund calculated that interest to equal $41,797.72 through December 14, 2020. Doc. 47-1 at 2.

The Fund also requests that Becker pay an amount of money that operates as liquidated damages. In particular, ERISA permits—in addition to principal and interest—the award of an amount "equal to the greater of . . . (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent" of the unpaid contributions. 29 U.S.C. § 1132(g)(2). In other words, the statute permits whichever is higher: the Trust Agreement interest accrued or the amount of liquidated damages provided under the plan. Because (as of November 21, 2020) the amount of interest exceeds that of the liquidated damages set forth in the Fund's plan, the Fund seeks an amount equal to the accrued interest. Doc. 47 at 2 & n.1; *see also N.L.R.B. v. Viola Industries—Elevator Div., Inc.*, 979 F.2d 1384, 1396 (10th Cir. 1992) (noting the "double interest" provision has been held "not to be a penalty but rather a form of liquidated damages").

Finally, the Fund seeks $40,658.00 in attorney's fees and costs. Doc. 46 at 9. The Fund supports this request with declarations from attorney Neil J. Gregorio, which provide a breakdown of the hourly

---

[2]   Becker asks the Court to deny the Fund's Motion for Statutory Damages for failure to comply with Local Rule 54.2. Doc. 39 at 1–2. That rule requires a party moving for statutory attorney's fees to submit a statement of consultation and a memorandum in support of its motion within 30 days of filing its motion. D. Kan. R. 54.2(c). The record shows that the Fund complied with D. Kan. R. 54.2. *See* Docs. 37, 38, & 45. *See generally State Farm Ins. Co. v. Weber*, No. 20-1008, 2021 WL 719068, at *2–3 (D. Kan. Feb. 24, 2021).

rates and hours spent on the case, and the invoices that the Fund has paid. Docs. 38-3 & 46-1.

### C

Becker generally opposes the Fund's request for liquidated damages and attorney's fees. Doc. 39 at 6. In particular, Becker contends that the record does not support the Fund's liquidated damages request. *Id.* at 5–6. Further, Becker claims the amount of attorney's fees is unreasonable for a case that was resolved at the pleadings stage and argues the requested fees should be "reduced by at least 50 percent." *Id.* at 6.

## II

Judge Melgren previously ordered Becker to start its withdrawal liability payments within 60 days of receiving the Fund's Demand Letter—*i.e.*, January 14, 2019. Doc. 35 at 4 (citing 29 U.S.C. § 1399(b)(1)). Under ERISA, as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), a "failure of the employer to make any withdrawal liability payment within the time prescribed shall be treated in the same manner as a delinquent contribution" within the meaning of Section 1145. 29 U.S.C. § 1451(b).

When a plan successfully brings a Section 1145 enforcement action, Section 1132(g)(2) requires courts to award certain damages. Those damages include the unpaid contributions, interest on the unpaid contributions, the greater of the amount of interest and the amount of liquidated damages provided under the plan, and reasonable attorney's fees and costs. *See* 29 U.S.C. § 1132(g)(2)(A)–(E). The Fund's instant motion, Doc. 38, establishes its entitlement to these damages.

### A

**1.** The statutory basis for the damages the Fund seeks is straightforward. The amount of unpaid contributions is determined by the Fund's schedule of liability payments set forth in the Demand Letter. 29 U.S.C. § 1399(b)(1)–(2). The interest rate on unpaid contributions is set by the "plan"—here, the Trust Agreement. *Id.* § 1132(g)(2). The plan also sets the amount of liquidated damages, but this amount must not exceed 20 percent of the unpaid contributions. *Id.* § 1132(g)(2)(ii). Moreover, when the amount of interest on unpaid contributions

exceeds the plan's liquidated damages amount, courts must award "double interest" under Section 1132(g)(2)(C); *see also N.L.R.B.*, 979 F.2d at 1396.

Section 1132(g)(2)(D) also requires courts to award reasonable attorney's fees and costs. "A reasonable fee is the product of a reasonable rate in the relevant community multiplied by the number of hours reasonably spent on the litigation." *Lippoldt v. Cole*, 468 F.3d 1204, 1222 (10th Cir. 2006). This so-called "lodestar" method has become the "guiding light" of federal fee-shifting jurisprudence and carries with it a strong presumption of reasonableness. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551–54 (2010). In rare circumstances, this presumption can be overcome by factors the lodestar method does not contemplate. *Id.* at 554.

**2.** Based on the foregoing authorities and an evaluation of the parties' submissions, the Fund has established its entitlement to the damages sought. Because the Fund's most recent calculation is outdated, the Fund must submit an updated calculation consistent with this Memorandum and Order no later than March 29, 2021. The parties shall confer before that submission; if Becker has a good faith objection to the revised calculation that comports with this Memorandum and Order, it shall file its objection within seven calendar days after the Fund's submission, and the matter will be set for an in-person hearing to resolve any differences.

The Fund is entitled to recover its unpaid contributions and interest. The amount of contributions owed must be based on the amount of missed monthly payments from January 2019 to March 2021. *See* Doc. 1-2 at 5; 29 U.S.C. § 1399(c)(2). The monthly payment amount is $15,199.17 as described in the Fund's Demand Letter. *See* Doc. 1-2 at 5; 29 U.S.C. § 1399(c)(2). Interest on these unpaid contributions is calculated at 12 percent as stated in the Trust Agreement. *See* Doc. 1-1 at 3; 29 U.S.C. § 1132(g)(2).

The Fund is also entitled to recover the additional payment of interest as contemplated in 29 U.S.C. § 1132(g)(2)(C). As of November 21, 2020, the $39,258.41 owed in interest exceeded the $39,213.79 owed in liquidated damages. Doc. 47 at 2 n.1. Thus, the Fund is entitled to an award equal to the amount of accrued interest, calculated as stated above. *See* 29 U.S.C. § 1132(g)(2)(C).

Finally, the Fund is entitled to $40,658.00 in attorney's fees and costs. The Fund provided a detailed breakdown of the hours spent on the case and the corresponding rate of each employee working on the matter. Docs. 38-3 & 46-1. In addition to the figures shown below, Gregorio's declaration also provides invoices for each month's activities, the firm's billing practices, and experience levels of each attorney and paralegal working on the matter. Docs. 38-3 & 46-1.

Based on that information, the requested attorney's fees are reasonable. The rates charged—between $210 and $280 per hour—are comparable to (if not lower than) local rates charged by other firms of comparable size for attorneys with comparable experience. *See, e.g.*, *Fox v. Pittsburg State Univ.*, 258 F. Supp. 3d 1243, 1269–72 (D. Kan. 2017). Moreover, the hours billed appear reasonable given the nature of this case. *See, e.g.*, *Boilermaker Blacksmith Nat. Pension Fund v. Tesar Indus. Contractors, Inc.*, No. 14-2029, 2015 WL 3776681, at *1–2 (D. Kan. June 17, 2015). The record shows that this case has been quite active for well over a year. *See* Doc. 1. During this time, the Fund prepared a Complaint, fended off a motion to dismiss, engaged in various pretrial activities, and successfully briefed a motion for judgment on the pleadings. Having reviewed the docket sheet, pleadings, invoices submitted detailing these activities, and considering the success obtained, expending approximately 170 hours in total does not appear unreasonable. Accordingly, Becker is ordered to pay the full amount requested. *See* Doc. 38-3 at ¶¶ 26–27.

**B**

Becker's opposition to the requested relief is quite limited. It opposes the Funds' motion only with regard to the amount of liquidated damages and attorney's fees. Doc. 39 at 5–6. Neither argument is sufficient nor sufficiently developed to deny the Fund's entitlement to the relief requested.

**1.** Becker makes two basic arguments in opposition to the Fund's liquidated damages calculation. In one, Becker contends that using the Trust Agreement to set the amount of liquidated damages is improper. Doc. 39 at 5. But Congress explicitly permits an award of the greater of "interest on the unpaid contributions" or "liquidated damages provided for under the plan . . . ." 29 U.S.C § 1132(g)(2)(C)(ii). Becker fails to offer any legal authority to support its contention, much less overcome the plain language of the statute. *But see* D. Kan. R. 7.6(a)(4) (obligating parties to support their arguments with citation to statutes and

6

authorities); *see also Lancaster v. Independent Sch. Dist. No. 5*, 149 F.3d 1228, 1235 n.2 (10th Cir. 1998) (noting even arguments that are difficult to make should be supported).

Becker also lodges an evidentiary objection to the declaration that the Fund offered in support of its request. Becker contends that declaration is inadmissible because the declarant lacked personal knowledge, suggesting it is only "an opinion that is outside of personal knowledge, unsupported in the record, not part of this substantive claim, and beyond the pleadings that even decided this case." Doc. 39 at 5–6. The declaration itself undermines Becker's unsupported argument: the declarant recites that all information is made based on personal knowledge and under penalty of perjury. Doc. 38-2 at ¶ 3; *see also* 28 U.S.C. § 1746 (establishing basis for declarations to be used as evidence). And, in relevant part, the declaration describes what policy the Fund's Board of Trustees followed with regard to the liquidated damages amount and when the Board voted to change the policy to what it is today. Doc. 38-2 at ¶¶ 6–7. Becker's bare evidentiary objection fails as a matter of law.

**2.** Becker also argues the Fund's attorney's fees and costs should be "reduced by at least 50% to reflect the stage and claim at issue." Doc. 39 at 6. But again, Becker fails to provide support for its claim or any meaningful analysis of the total amount, much less any criticism of the hourly rate, hours spent for a task, or number of timekeepers. *See Id.* That is insufficient, *see* D. Kan. Rule 7.6(a)(4), especially in light of the affidavit suggesting these charges were submitted to and paid by the Fund, Doc. 38-3 at 36.

### III

The Fund's Motion for Statutory Damages (Doc. 37) is GRANTED. On or before March 29, 2021, the Fund shall submit calculations through March 14, 2021, consistent with this Memorandum and Order. The parties shall confer before that submission; if Becker has a good faith objection to the revised calculation that is in accordance with this Memorandum and Order, it shall file its objection within seven calendar days after the Fund's submission, and the matter will be set for an in-person hearing to resolve any differences.

It is so ordered.

Date:  March 5, 2021            _s/ Toby Crouse_
                                Toby Crouse
                                United States District Judge